DAVID J. DACRUZ *v.* STATE FARM
FIRE AND CASUALTY COMPANY
(SC 16847)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued October 28, 2003—officially released May 4, 2004

*Barbara A. Frederick*, with whom were *James N. Tallberg* and, on the brief, *Jeffrey A. Dempsey*, for the appellant (defendant).

*Ralph J. Monaco*, with whom was *Thomas J. Londregan*, for the appellee (plaintiff).

*Jon Berk* and *Claudia A. Baio* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Opinion*

PALMER, J. The dispositive issue raised by this certified appeal is whether a judgment declaring that the defendant, State Farm Fire and Casualty Company (State Farm), had no duty to defend its insured against a claim brought by the plaintiff, David J. DaCruz, bars the plaintiff, under principles of collateral estoppel, from holding State Farm liable, pursuant to General Statutes § 38a-321,[1] for damages awarded pursuant to

---

[1] General Statutes § 38a-321 provides: "Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of

a judgment obtained by the plaintiff against the insured. The trial court, *Levin, J.,* rendered judgment for State Farm, from which the plaintiff appealed to the Appellate Court. The Appellate Court concluded, contrary to the determination of the trial court, that State Farm is liable to the plaintiff under § 38a-321 for the judgment obtained by the plaintiff against State Farm's insured despite the earlier judgment declaring that State Farm had no duty to defend the insured. See *DaCruz* v. *State Farm Fire & Casualty Co.,* 69 Conn. App. 507, 516, 794 A.2d 1117 (2002). We disagree with the Appellate Court and, accordingly, reverse its judgment.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. On January 14, 1994, the plaintiff was assaulted by a classmate, Michael Bullock, while attending Amity Regional Junior High School in Orange. The plaintiff subsequently commenced an action[2] (DaCruz action) against Amity Regional School District and Michael Bullock,

---

such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void. Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

[2] Because the plaintiff was a minor when the DaCruz action was commenced, it was brought on his behalf by his parents. For ease of reference, we refer to DaCruz as the plaintiff in the DaCruz action.

among others,[3] seeking damages for injuries that he had sustained as a result of that assault. In one count of the complaint, the plaintiff alleged that Michael Bullock had committed an intentional assault by threatening him verbally, pushing him and then repeatedly striking him in the face and body. According to the plaintiff, he was knocked to the ground and rendered unconscious. In a second count, the plaintiff alleged the same facts but claimed that Michael Bullock's actions were negligent.[4] In another count, the plaintiff alleged that Michael Bullock's parents, Curtis Bullock and Sheila Meadows, were negligent in failing to use reasonable care to control and to restrain their son, and that they were jointly and severally liable under General Statutes § 52-572[5] for their son's conduct.

At the time of the assault, Michael Bullock was residing with his father, Curtis Bullock, and Susan Bullock. Susan Bullock was not married to Curtis Bullock at the time of the assault but married him approximately five months later. Susan Bullock owned a homeowner's

---

[3] The plaintiff also named as defendants in the DaCruz action Michael Bullock's parents, Curtis Bullock and Sheila Meadows, the town of Orange, a second student who allegedly had participated in the assault, and that student's parents, and certain employees of Amity Regional School District. The plaintiff reached a settlement with all of the defendants in the DaCruz action except Michael Bullock and his parents.

[4] The plaintiff specifically alleged, with respect to this count, that Michael Bullock "was negligent and careless in one or more of the following ways in that he: (a) failed to exercise reasonable care; (b) negligently used an excessive and unreasonable amount of force when he knew or should have known that such use of force would cause substantial injury to the plaintiff; and (c) negligently continued to use excessive and unreasonable force after he knew or should have known that [the] plaintiff was unconscious or semiconscious."

[5] General Statutes § 52-572 provides in relevant part: "(a) The . . . parents . . . of any unemancipated minor or minors, which minor or minors wilfully or maliciously cause . . . injury to any person . . . shall be jointly and severally liable with the minor or minors for the . . . injury to an amount not exceeding five thousand dollars, if the minor or minors would have been liable for the damage or injury if they had been adults. . . ."

insurance policy issued by State Farm that was in effect on the date of the assault. That policy provided coverage for any claim or action brought against an insured[6] or "any . . . person under the age of [twenty-one]" in Susan Bullock's care[7] for damages caused by an "occurrence." The policy defines an "occurrence" as an "accident" that results in bodily injury or property damage. Claims brought for bodily injury caused by an insured that the insured either expected or intended are expressly excluded from coverage under the policy.

State Farm initially retained an attorney to represent Michael Bullock and Curtis Bullock in the DaCruz action. Thereafter, however, State Farm brought a separate action (State Farm action) seeking a judgment declaring that it had no duty either to defend or to indemnify Michael Bullock and Curtis Bullock in the DaCruz action. The defendants in the State Farm action included Michael Bullock, Curtis Bullock, Susan Bullock, the plaintiff and the plaintiff's parents, Herminio DaCruz and Maria DaCruz. The court in the State Farm action rendered a default judgment as to Michael Bullock and Curtis Bullock on the basis of their failure to appear.[8] The plaintiff and Herminio DaCruz, however, appeared by counsel and vigorously contested the State Farm action.

State Farm filed a motion for summary judgment in the State Farm action. Upon concluding that there were

---

[6] Persons insured under the policy included any spouse or other relative of Susan Bullock who resided with her.

[7] There does not appear to be any dispute that Michael Bullock was an insured under Susan Bullock's homeowner's insurance policy because he was a person under the age of twenty-one who was living in her household at the time of the assault.

[8] Curtis Bullock initially filed an appearance pro se but subsequently did not appear in the State Farm action. The record is unclear as to whether Susan Bullock participated in the State Farm action. Susan Bullock, however, was not named as a defendant in the DaCruz action. See footnote 3 of this opinion.

no material facts in dispute, the trial court, *Blue, J.*, granted State Farm's motion for summary judgment with respect to State Farm's claim that it had no duty to defend Michael Bullock and Curtis Bullock in the DaCruz action. In his memorandum of decision, Judge Blue explained that the facts alleged in the DaCruz action permitted only one possible inference with respect to Michael Bullock's state of mind when he had attacked the plaintiff, namely, that he had done so intentionally. Judge Blue concluded that "it [was] impossible to imagine any conceivable scenario under which an assault like the one described in the DaCruz complaint could be done negligently." Judge Blue further concluded that, because the plaintiff in the DaCruz action alleged no facts other than those pointing ineluctably to the conclusion that the assault was intentional, "the general allegations of negligence in the . . . complaint [were] a transparent attempt to trigger insurance coverage." (Internal quotation marks omitted.) Judge Blue also concluded that State Farm had no duty to defend Curtis Bullock because he was not married to Susan Bullock, the policyholder, at the time of the assault and, therefore, was not an "insured" within the meaning of the policy. See footnote 6 of this opinion and accompanying text.

Judge Blue declined, however, to render judgment declaring that State Farm did not have a duty to *indemnify* Michael Bullock and Curtis Bullock for any damages for which they might become liable in the DaCruz action. Judge Blue concluded that it would be inappropriate to decide the indemnification issue in light of *Hartford Accident & Indemnity Co.* v. *Williamson*, 153 Conn. 345, 216 A.2d 635 (1966), in which we held that the trial court in that case properly had concluded, in the circumstances presented, that the claim of the plaintiff insurer that it owed no duty of indemnification to its insured properly was raised "in a defense to an

action under [what is now § 38a-321] should the occasion for that [action] arise"; id., 350; rather than in a declaratory judgment action that is commenced prior to a judicial determination of the insured's liability. Id.

No party appealed from the judgment rendered in the State Farm action. In accordance with Judge Blue's decision in the State Farm action, the attorney retained by State Farm to represent Michael Bullock and Curtis Bullock in the DaCruz action withdrew his appearance.

Thereafter, the plaintiff filed motions for default as to Michael Bullock, Curtis Bullock and Sheila Meadows in the DaCruz action.[9] The trial court, *Curran, J.,* granted the plaintiff's motions. Judge Curran then held a hearing in damages. At the conclusion of the hearing, Judge Curran found that Michael Bullock's conduct was intentional and that Michael Bullock and his parents were jointly and, severally liable to the plaintiff for $31,398 in economic damages, $93,602 in noneconomic damages and $25,000 in punitive damages. At the urging of the plaintiff's counsel, Judge Curran thereafter indicated that Michael Bullock's conduct also was negligent.[10] Although Judge Curran neither filed a memo-

---

[9] Because the plaintiff had settled his claims against all of the defendants except Michael Bullock and his parents; see footnote 3 of this opinion; the plaintiff filed an amended complaint naming as defendants Michael Bullock and his parents only. The claims and factual allegations contained in the amended complaint otherwise are identical in all material respects to the claims and factual allegations of the original complaint.

[10] The following colloquy occurred between Judge Curran and counsel for the plaintiff at the conclusion of the hearing in damages:

"The Court: . . . [I]t is obvious to the court that [the plaintiff] suffered a violent attack on him for which there can be no good reason and he has suffered severe traumatic injuries as a result of this, some of which may be permanent, and he is entitled to be recompensed. From . . . the evidence that was presented here today to the court, the court has to find that this is an intentional act on the part of [Michael] Bullock. This doesn't appear to be two boys calling each other names and then squaring off in the parking lot. [The plaintiff] was minding his own business when he was attacked and there can be no reason in modern society, a civilized society, for this kind of conduct, and I think under those circumstances he is entitled to recover. I am going to enter a total judgment in the amount of $125,000 and from

randum of decision nor signed the transcript of his oral finding, he did sign and issue a judgment setting forth his findings in regard to damages. The judgment, which had been prepared by the plaintiff's counsel, provided in relevant part: "It is further adjudged that this court

---

that, of course, the court finds the economic damages to be $31,398, the balance being noneconomic damages, and I make no finding as to future economic damages because they are too nebulous at this point.

"[Ralph J. Monaco, the Plaintiff's Counsel]: Thank you, Your Honor.

"The Court: You are welcome.

"Mr. Monaco: We appreciate your time and the court's time.

"The Court: Well, that is what the court is here for. I hope this young man can put his life together and go on from here. It sounds like a lot of money but, at the same time, whether [he] will ever recover, I have my doubts.

"Mr. Monaco: That remains to be seen and we do also, Your Honor. There is one item that comes to mind. There are actually two counts against Michael Bullock and I believe there is a count against his parents for parental liability.

"The Court: Well, I am going to enter the judgment against all three.

"Mr. Monaco: Thank you, Your Honor. I just wanted the record to be clear in that regard.

"The Court: Now, I found this to be an intentional tort, and are you asking for attorney's fees? The question is—trying to collect those, too?

\* \* \*

"The Court: I think that [$25,000] is a reasonable fee."

Following a sidebar conference between Judge Curran and the plaintiff's counsel, the following colloquy ensued:

"The Court: Alright, in a brief conference with counsel, subsequent to the recess, the question of a finding of an intentional tort has been brought up. It is the understanding of the court that I have found this to be an intentional tort. The act that was perpetrated upon [the plaintiff] was intentional and was particularly vicious, and if there is any question about it, it is cleared up now. Is there anything else?

"Mr. Monaco: No, Your Honor. I just wanted the record to reflect that there are two counts against Michael Bullock, one for an intentional assault and one for negligence in repeatedly hitting [the plaintiff] and using an amount of force which was excessive, and that was the basis for our negligence claim. It was something that gave rise to an insurance dispute—

"The Court: Certainly, the amount of force exercised by [Michael] Bullock was excessive because he rendered [the plaintiff] unconscious with the first blow. Is there anything else?

"Mr. Monaco: Thank you. No, Your Honor. Those were our allegations in the second count, that he negligently used an excessive and unreasonable amount of force, and if I understand the record correctly, you're finding that that did in fact occur.

"The Court: Yes.

"Mr. Monaco: Thank you, Your Honor."

has found that the conduct of . . . Michael Bullock . . . was an intentional assault . . . as alleged in count [one] of the amended complaint . . . and, further, that the conduct of . . . Michael Bullock . . . was negligent and careless [as alleged in count two of the amended complaint] in that [he] used an excessive and unreasonable amount of force upon the plaintiff." The judgment further provided that "the court finds [that] . . . Curtis Bullock and Sheila Meadows . . . are liable as parents and guardians of . . . Michael Bullock . . . pursuant to count [three of the amended complaint]." Finally, the judgment provided that it "is joint and several as to all three defendants."

The plaintiff then commenced the present action against State Farm under § 38a-321 seeking satisfaction of the judgment in the DaCruz action. State Farm claimed, by way of special defense, that the incident was not covered under Susan Bullock's homeowner's insurance policy because (1) it was not an "occurrence" as defined by the policy, and (2) the policy expressly excludes coverage for injury or damage that is expected or intended. State Farm also raised a second special defense, contending that the plaintiff's claim was precluded by (1) the judgment rendered by Judge Blue declaring that State Farm had no duty to defend Michael Bullock and Curtis Bullock in the DaCruz action, and (2) Judge Blue's determination that the conduct attributed to Michael Bullock in the complaint filed in the DaCruz action necessarily was intentional rather than negligent. The plaintiff and State Farm each filed a motion for summary judgment. The trial court, *Levin, J.*, denied the plaintiff's motion for summary judgment and granted State Farm's motion for summary judgment, essentially concluding that the incident was an intentional assault not covered by the policy.[11] Having

---

[11] Judge Levin concluded, inter alia, that "no reasonable person could but find that the assault on [the plaintiff] was no accident and, therefore, not caused by an occurrence as defined in State Farm's policy. Moreover, bodily

decided the issue before him on that ground, Judge Levin declined to address State Farm's alternate special defense that the plaintiff's claim was barred, under principles of collateral estoppel, by virtue of Judge Blue's decision to reject the plaintiff's contention that State Farm had a duty to defend Michael Bullock and Curtis Bullock. Judge Levin thereupon rendered judgment for State Farm.

The plaintiff appealed to the Appellate Court, which concluded that Judge Levin improperly had determined that State Farm had no duty to indemnify Michael Bullock.[12] See *DaCruz* v. *State Farm Fire & Casualty Co.*, supra, 69 Conn. App. 516. Specifically, the Appellate Court held that, "[b]ecause the judgment rendered in the DaCruz action was based on negligence in part, [Michael] Bullock would have had a viable contractual claim against State Farm. Therefore, the plaintiff may recover against State Farm pursuant to § 38a-321 as a matter of law." Id. Upon so concluding, the Appellate Court reversed the judgment of the trial court, *Levin, J.*, and remanded the case "for further proceedings to determine the amount of damages attributable to State Farm because of [Michael] Bullock's negligent conduct." Id. We subsequently granted State Farm's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the plaintiff may recover against [State Farm] pursuant to . . . § 38a-321 as a matter of law?" *DaCruz* v. *State Farm Fire & Casualty Co.*, 261 Conn. 938, 808 A.2d 1132 (2002). We answer the certified question in the negative.

We are persuaded that the plaintiff's action under § 38a-321 is barred, under principles of collateral estoppel, by virtue of Judge Blue's determination that State

injury to [the plaintiff] was both expected and certainly intended by Michael Bullock . . . ."

[12] It does not appear that the plaintiff raised any claim on appeal regarding State Farm's duty to indemnify Curtis Bullock.

Farm had no duty to defend Michael Bullock in the DaCruz action. "The applicability of the doctrine of collateral estoppel . . . presents a question of law . . . . The fundamental principles underlying the doctrine of collateral estoppel are well established. The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment." (Citations omitted; internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 57–58, 808 A.2d 1107 (2002). "In other words, [the doctrine of] collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of th[at] issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta."[13] (Internal quotation marks omitted.) Id., 58 n.17.

---

[13] "We note that the doctrines of collateral estoppel and res judicata, commonly referred to as issue preclusion and claim preclusion, respectively, have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion [as we have explained] . . . prevents a party from relitigating an issue that has been determined in a prior suit.

There is no dispute that the issue of State Farm's duty to defend Michael Bullock in the DaCruz action was fully and fairly litigated by the plaintiff, who vigorously opposed State Farm's claims in the State Farm action. Thus, under principles of collateral estoppel, the plaintiff is barred from relitigating, in the present action, any issues that actually and necessarily were decided in the State Farm action. We conclude that the judgment of the trial court, *Blue, J.*, declaring that State Farm had no duty to defend Michael Bullock in the DaCruz action actually and necessarily determined that State Farm also had no duty to indemnify Michael Bullock.

As we repeatedly have stated, the duty to defend is considerably broader than the duty to indemnify. E.g., *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 256, 819 A.2d 773 (2003); *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 40, 801 A.2d 752 (2002); *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 324, 714 A.2d 1230 (1998). "[A]n insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint." (Internal quotation

. . . Notwithstanding the differences between the two doctrines, we have noted their conceptual closeness . . . as well as their similarity of purpose." (Citations omitted; internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, supra, 262 Conn. 57–58 n.16.

marks omitted.) *Security Ins. Co. of Hartford* v. *Lumbermens Mutual Casualty Co.*, 264 Conn. 688, 711–12, 826 A.2d 107 (2003). Moreover, "[i]f an allegation of the complaint falls *even possibly* within the coverage, then the insurance company must defend the insured." (Emphasis added; internal quotation marks omitted.) *Moore* v. *Continental Casualty Co.*, 252 Conn. 405, 409, 746 A.2d 1252 (2000). "In contrast to the duty to defend, the duty to indemnify is narrower: while the duty to defend depends only on the allegations made against the insured, the duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case." (Internal quotation marks omitted.) *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, supra, 48–49, quoting *Home Ins. Co.* v. *St. Paul Fire & Marine Ins. Co.*, 229 F.3d 56, 66 (1st Cir. 2000).

Thus, the duty to defend is triggered whenever a complaint alleges facts that *potentially* could fall within the scope of coverage, whereas the duty to indemnify arises only if the evidence adduced at trial establishes that the conduct *actually* was covered by the policy. Because the duty to defend is significantly broader than the duty to indemnify, "where there is no duty to defend, there is no duty to indemnify . . . ." *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 382, 773 A.2d 906 (2001); see also *EAD Metallurgical, Inc.* v. *Aetna Casualty & Surety Co.*, 905 F.2d 8, 11 (2d Cir. 1990) (no duty to defend necessarily means no duty to indemnify); *Crum & Forster Managers Corp.* v. *Resolution Trust Corp.*, 156 Ill. 2d 384, 398, 620 N.E.2d 1073 (1993) (same). Consequently, Judge Blue's determination that State Farm had no duty to defend Michael Bullock in the DaCruz action necessarily means that State Farm also had no duty to indemnify Michael Bullock in that action. As we have explained, that determination is binding on the plaintiff, under principles of collateral

estoppel, in view of the fact that he was a party to the State Farm action.

The plaintiff contends that State Farm may not invoke the doctrine of collateral estoppel against him in the present action because, under *Hartford Accident & Indemnity Co.* v. *Williamson*, supra, 153 Conn. 345, the issue of an insurer's duty to indemnify must be litigated and decided in an action brought under § 38a-321. We do not read *Williamson* so broadly.

As we previously have explained, in *Williamson*, this court rejected a claim that the trial court improperly had declined to render a judgment, during the pendency of the underlying action against the insured, declaring that the insurer had no duty to indemnify the insured. Id., 349–50. In *Williamson*, however, the insurer had provided an attorney to represent the insured in the underlying action; id., 348; and the issue of the insurer's duty to defend was not before this court on appeal. See id., 348–49. To the extent that the issue of an insurer's duty to indemnify may be more appropriately addressed in an action brought under § 38a-321 rather than in an action for a declaratory judgment brought prior to the resolution of the underlying action against the insured, that "principle . . . is only operative in cases [in which] . . . the insurer's duty to defend its insured has arisen." *Crum & Forster Managers Corp.* v. *Resolution Trust Co.*, supra, 156 Ill. 2d 398. In cases such as *Williamson*, in which the insurer's duty to defend has not been the subject of a successful challenge, there remains the possibility that the facts adduced in the underlying action will demonstrate that the insurer also has a duty to indemnify. In such circumstances, if the plaintiff in the underlying action obtains a judgment against the insured, the plaintiff's action against the insurer under § 38a-321 provides the insurer with an appropriate forum in which to raise the defense that it has no duty to indemnify. Because *Williamson* stands

only for that limited proposition, our holding in that case is not a bar to State Farm's invocation of the doctrine of collateral estoppel, predicated on Judge Blue's determination in the State Farm action that State Farm had no duty to defend Michael Bullock, to establish that State Farm had no duty to indemnify Michael Bullock as well.[14]

More importantly, the plaintiff's claim is foreclosed by this court's opinion in *Jensen* v. *Nationwide Mutual Ins. Co.*, 158 Conn. 251, 259 A.2d 598 (1969). In *Jensen*, the insurer obtained a judgment declaring that it had no duty either to defend or to indemnify its insured in connection with a pending action brought against the insured by a third party who had sustained injuries in an automobile accident with the insured. Id., 253–54. Because that injured third party also was a party to the declaratory judgment action; id., 254; we gave preclusive effect to the judgment in that action when the injured third party sought to recover against the insurer in a direct action under what is now § 38a-321. Id., 258–59. In so doing, we expressly rejected the insured's claim "that the trial court [in the declaratory judgment action] should have refused to entertain [that] action . . . on the ground that the [insured] had a more appropriate remedy under [what is now § 38a-321] . . . ." Id., 260. Thus, not only is *Williamson* no impediment

---

[14] The plaintiff also asserts that Judge Blue did not properly decide the issue of Michael Bullock's intent in granting State Farm's motion for summary judgment because that issue necessarily gives rise to a question of fact to be decided only after a trial. Although we agree that intent ordinarily is an issue to be decided by the fact finder, when the facts alleged permit only one conclusion regarding an actor's state of mind, that issue is appropriately resolved by way of summary judgment. Cf. *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 250, 618 A.2d 506 (1992) ("even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact"). As Judge Blue found, the plaintiff's allegations concerning Michael Bullock's conduct gave rise to no disputed issue with respect to the intentional nature of that conduct.

to an action for a declaratory judgment seeking a determination of the insurer's obligations under an insurance policy, but *Jensen* expressly permits such an action, and, under *Jensen*, a judgment obtained in a declaratory judgment action is entitled to preclusive effect to the same extent that any other judgment would be entitled to such effect upon proper application of collateral estoppel principles.[15]

The plaintiff also asserts, as he did in the Appellate Court; see *DaCruz* v. *State Farm Fire & Casualty Co.*, supra, 69 Conn. App. 511; that State Farm is barred by principles of collateral estoppel from challenging Judge Curran's finding, following the hearing in damages in the DaCruz action, that Michael Bullock's conduct was intentional *and* negligent. As the Appellate Court correctly indicated, however, the plaintiff cannot invoke the doctrine of collateral estoppel against State Farm in the present action because State Farm was neither a party to the DaCruz action nor in privity with Michael Bullock.[16] See *DaCruz* v. *State Farm Fire & Casualty*

---

[15] We note that, in light of the relatively broad language used by this court in *Williamson*, it is understandable why Judge Blue declined to address the issue of State Farm's duty to indemnify. As we have explained, however, Judge Blue could have rendered judgment for State Farm on the indemnification issue as well notwithstanding the language of *Williamson*.

[16] The plaintiff asserts that State Farm was in privity with Michael Bullock for purposes of the DaCruz action because State Farm and Michael Bullock "shared the common interest [of] defeating [the plaintiff's] claims." We disagree that any such "common interest" placed State Farm in privity with Michael Bullock. "Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 814, 695 A.2d 1010 (1997). State Farm's primary and overriding interest was not in establishing that Michael Bullock was not liable to the plaintiff but, rather, in obtaining a determination that it had no duty to defend or to indemnify Michael Bullock because his conduct was not covered by Susan Bullock's homeowner's insurance policy. In such circumstances, we cannot conclude that State Farm and Michael Bullock were in privity: State Farm's interest, in contrast to Michael Bullock's interest, was to demon-

*Co.*, supra, 69 Conn. App. 513–14 and n.7; see also *Maz- ziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 813, 695 A.2d 1010 (1997) (collateral estoppel "requires an identity of issues between the prior and subsequent proceedings and operates only against the same parties or those in privity with them"). Contrary to the plaintiff's claim, therefore, Judge Curran's finding of negligence is not entitled to preclusive effect in the present action.

Even if the plaintiff were not precluded by principles of collateral estoppel from recovering against State Farm under § 38a-321, we agree with Judge Levin that the plaintiff nevertheless would not be entitled to enforce the judgment he has obtained in the DaCruz action against State Farm. As Judge Levin concluded, a review of the testimony adduced by the plaintiff at the hearing in damages in the DaCruz action makes it abundantly clear that only one possible inference can be drawn regarding Michael Bullock's state of mind when he assaulted the plaintiff: Michael Bullock attacked the plaintiff with the specific intent to cause him bodily harm. In such circumstances, State Farm has no duty to indemnify Michael Bullock because his conduct falls within the policy exclusion for bodily injury that is expected or intended.

The Appellate Court concluded that Judge Levin failed to give proper effect to Judge Curran's finding, following the hearing in damages in the DaCruz action, that Michael Bullock's conduct, though intentional, also was negligent.[17] See *DaCruz* v. *State Farm Fire & Casu-*

strate that Michael Bullock's conduct was intentional and, therefore, outside the scope of the policy.

[17] Judge Curran's finding of negligence apparently was predicated on a theory advanced by plaintiff's counsel at the hearing in damages, namely, that Michael Bullock used an "excessive" amount of force in "repeatedly hitting" the plaintiff. Footnote 10 of this opinion. We fail to see how this otherwise accurate characterization of Michael Bullock's conduct "somehow transform[s] [that] conduct from intentional to negligent . . . ." *American National Fire Ins. Co.* v. *Schuss*, 221 Conn. 768, 777, 607 A.2d 418 (1992).

*alty Co.*, supra, 69 Conn. App. 516. To the contrary, Judge Levin correctly concluded that Judge Curran's finding of negligence was both factually and legally insupportable. Judge Curran's finding of negligence was factually untenable because it cannot be squared either with the allegations of the complaint or with the evidence adduced in support of those allegations at the hearing in damages. Both the allegations and the evidence lead inescapably to the conclusion that Michael Bullock's assault on the plaintiff was intentional. Judge Curran's finding of negligence was legally untenable because, as we previously have observed, "the same conduct [cannot] reasonably be determined to have been both intentionally and negligently tortious." *American National Fire Ins. Co.* v. *Schuss*, 221 Conn. 768, 777, 607 A.2d 418 (1992). "[I]ntentional conduct and negligent conduct, although differing only by a matter of degree; *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 103, 491 A.2d 368 (1985); are separate and mutually exclusive. . . . Although in a given case there may be doubt about whether one acted intentionally or negligently, the difference in meaning is clear. 'As [Oliver Wendell] Holmes observed, even a dog knows the difference between being tripped over and being kicked.' [W. Prosser & W. Keeton, Torts (5th Ed. 1984) p. 33]." (Citation omitted.) *American National Fire Ins. Co.* v. *Schuss*, supra, 775–76. In the present case, the nature of the conduct at issue is not in doubt. As Judge Curran expressly found, "[t]he act that was perpetrated upon [the plaintiff by Michael Bullock] was intentional and was particularly vicious . . . ." Thus, because Judge Curran's nominal finding of negligence lacks any basis in law or in fact, it is without legal force.[18]

---

[18] There can be no doubt, of course, as to the plaintiff's motivation for seeking a judgment in the DaCruz action that was based, at least in part, on a finding that Michael Bullock negligently or accidentally had harmed the plaintiff. In the absence of such a finding, Michael Bullock's conduct clearly would not fall within the coverage of Susan Bullock's homeowner's insurance policy. Although the plaintiff's desire for a deep pocket from

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

which to satisfy a judgment—or from which to obtain a settlement—is understandable, the bona fides of his transparent efforts to accomplish that result in the circumstances of the present case; see footnote 10 of this opinion; are, at best, debatable.